UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

In the Matter of the Extradition of     :     The Honorable Cathy L. Waldor
                                        :
BENITO ROLANDO CONTRERAS                :     Mag. No. 20-9026
QUICAÑO                                 :
                                        :     Extradition Complaint
                                        :     18 U.S.C. § 3184

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1.  I represent the United States in fulfilling its treaty obligations to Peru.

2.  There is an extradition treaty in force between the United States and Peru. *See* Extradition Treaty Between the United States of America and the Republic of Peru, U.S.-Peru, July 26, 2001, S. TREATY DOC. No. 107-6 (2002) (the "Treaty").

3.  Pursuant to the Treaty, the Government of Peru has submitted a formal request through diplomatic channels for the extradition of fugitive Benito Rolando Contreras Quicāno ("Contreras Quicāno").

4.  According to the information the Government of Peru has provided, Contreras Quicāno was charged with rape, in violation of Section 170,

Paragraph 1, of the Peruvian Criminal Code.[1]

5. This offense was committed within the jurisdiction of Peru. On or about January 7, 2016, in Lima, Peru, Judges Lecaros Chavez, Segura Salas and Espinoza Soberón of the Court of Appeals in and for Lima, First Standing Appellate Criminal Division, ordered the issuance of a warrant for Contreras Quicaño's arrest, on the basis of the following facts:

a. Between April 2008 and January 21, 2009, the victim (the "victim") was approximately 15–16 years old, and Contreras Quicaño was approximately 51–52 years old.

b. The victim had known Contreras Quicaño since she was a child, as she and her mother, LH ("LH"), were his neighbors. The victim was romantically involved with Contreras Quicaño's younger brother, Isidro Bulfredo Contreras Quicaño ("Isidro"), who was approximately 40 years old and lived with Contreras Quicaño.

c. In 2007, the victim cooked and cleaned for Contreras Quicaño and Isidro. While the victim was in his home, Contreras Quicaño attempted to sexually abuse the victim, but the victim would not allow it.

---

[1] Peruvian authorities initially charged Contreras Quicaño with violating Article 173(3) of the Peruvian Criminal Code. However, a Peruvian court declared that provision unconstitutional, and Peruvian authorities charged him with violating Article 170, which was in effect at the time of the offense conduct alleged in Peru.

2

d. Between approximately April 2008 and January 21, 2009, Contreras Quicaño raped the victim twice in his bedroom and twice in his brother's bedroom.

e. At times before or during the charged conduct, Contreras Quicaño took approximately fifteen photographs of the victim when she was partially clothed or naked.[2] For some of these photographs, Contreras Quicaño removed the victim's clothes while she was asleep. He also photographed the victim, nude, in the living room of his house. Contreras Quicaño threatened to post the photographs online if the victim did not engage in sex with him. The victim provided one of these photographs to the police and stated that she had destroyed the others. Contreras Quicaño admitted to Peruvian authorities that the photograph was taken in his living room. He also admitted to knowing LH, and claimed she had threatened that the victim would report him to the police unless he paid her money.

f. One of the rapes occurred when the victim came to Contreras Quicaño's home to speak with Isidro about renting a room in the house. Isidro allowed the victim into the house, and then he went to

---

[2] Peruvian authorities also charged Contreras Quicaño with a child pornography offense, but in or about January 2019, a Peruvian court ruled that Peru's statute of limitations bars proceeding on the child pornography offense.

3

his room. Contreras Quicaño appeared and stated that if the victim had not come, he was going to post the photos on the Internet. Contreras Quicaño grabbed the victim, threw her onto a bed, lifted her skirt, tore her underpants, and raped her. The victim started crying when Contreras Quicaño's penis entered her vagina. Contreras Quicaño covered her mouth because she was screaming. Contreras Quicaño kept the victim's underpants after raping her.

  g. Isidro suggested to LH that she and the victim live with him and Contreras Quicaño in their home so that LH could avoid paying rent elsewhere. Isidro told LH that she would not have any problems paying rent for a room in the home he shared with Contreras Quicaño.

  h. On or about January 4, 2009, the victim and LH moved into Contreras Quicaño's home. There, the victim and LH shared a room and a bed. Contreras Quicaño entered the shared room and, even if LH was present, touched the victim. In addition, while the victim was in his home, Contreras Quicaño touched her "bottom."

  i. On January 21, 2009, Contreras Quicaño, naked, entered the bathroom in his home while the victim was showering, and attempted to sexually assault her. After hearing the victim scream, LH fought with Contreras Quicaño, including hitting him with a stool, prompting him to leave. Later that day, Isidro rented a room for the victim and her mother

4

several blocks away from Contreras Quicaño's home.

j. A medical examination of the victim, performed during the investigation of the rapes, indicated that someone had sexual contact with her.

k. Contreras Quicaño and Isidro paid the victim not to report the rapes.

6. Contreras Quicaño may be found within the jurisdiction of this Court at 37 Northbrook Avenue, Lawrenceville, New Jersey.

7. Katherine C. Fennell, an Attorney-Adviser in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the Treaty covers the offense for which Peru seeks extradition, and confirming that the documents supporting the request for extradition were certified by the principal U.S. diplomatic or consular officer in Peru.

8. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from Peru, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as Government's Exhibit #1) are filed with this complaint and incorporated by reference herein.

9. Contreras Quicaño likely would flee if he learned of the existence of

5

a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of Contreras Quicaño be issued in accordance with 18 U.S.C. § 3184 and the Treaty, so that he may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered, and that this complaint and the warrant be placed under the seal of the Court, except as disclosure is needed for its execution, until such time as the warrant is executed.

_____
VERA VARSHAVSKY
Assistant United States Attorney

Sworn to before me and subscribed in my presence
on this 5th day of February, 2020

_____
THE HONORABLE CATHY L. WALDOR
United States Magistrate Judge